SAMUEL, Judge.
Plaintiff filed this suit against the defendant to recover workmen’s compensation benefits for total and permanent disability resulting from an accident which occurred on March 23, 1979 during the course of his employment with the defendant. Plaintiff also sought an accounting to determine the amount of back pay and allowances allegedly owed him by defendant as the result of being discharged in violation of his union contract. Defendant answered, denying the allegations of the petition.
After a trial on the merits, judgment was rendered in favor of plaintiff awarding him workmen’s compensation benefits for 450 weeks at the rate of $141 per week from March 23,1979 until paid, subject to a credit of $7,430.56 paid by defendant through January 21, 1980. The judgment also dismissed plaintiff’s contract claim.
Plaintiff has appealed from that portion of the judgment dismissing his contract claim for wrongful dismissal, and defendant has answered the appeal complaining of the award of compensation benefits.
The record reveals that plaintiff was injured on March 23, 1979 while driving a truck for defendant. He states he slipped on an oil slick while attempting to get out of the truck, fell, and twisted his right knee. He was first seen at the Nicholson-Calhoun-Baehr Clinic, but received no relief. It was stipulated that these doctors were general practitioners, treated plaintiff *89 for approximately three weeks after the injury, and referred him to an orthopedist.
Plaintiff then saw Dr. Naum Klainer, an orthopedic specialist, first on April 20,1979. Dr. Klainer’s examination revealed tenderness, swelling, and an inability to fully extend the right knee. X-rays taken by the general practitioners were negative, and plaintiff was ordered to obtain an ortho-gram. This procedure confirmed the physicians’ original diagnosis of a torn medial meniscus of the right knee, and also revealed a pre-existing cyst in plaintiff’s knee which could have been aggravated by the tear of the meniscus. The orthopedist recommended surgery for a complete removal of the meniscus, since he was of the opinion physical therapy or other conservative treatment would not cure a torn cartilage. Plaintiff refused surgery, and he continued to refuse surgery to the date of trial.
Plaintiff returned to work from May 14 to May 21,1979, but was not able to continue. He was released from treatment on June 14,1979 by Dr. Klainer. The evidence indicates plaintiff obtained a second opinion from another orthopedic specialist, who attempted to treat him conservatively with physical therapy. No benefit resulted, and this physician released plaintiff to attempt to work in January of 1980. Plaintiff testified he was unable to obtain employment at that time. Plaintiff also testified he worked for about 1½ weeks in June, 1980 for a construction company, but was unable to continue because the pain and swelling of his right knee returned. He has an eleventh grade education, and attended two years of mechanics school. He denies having the ability to hold down a desk job, and asserts he has earned a living by manual labor since he was very young. Dr. Klainer estimated his disability at a range between five and ten percent of his right knee.
Under all of the circumstances of the case, and because defendant offered no contrary evidence, we are unable to disagree with the trial court’s findings that plaintiff’s injuries resulted in permanent partial disability, and we affirm that portion of the judgment.
Plaintiff bases his second cause of action on his union contract. He was discharged by Dr. Klainer on June 14, 1979. When he reported back to work, he was given a dismissal slip dated June 7, 1979 stating as a reason for discharge that he quit when work was available. Plaintiff bases his argument on Article 8 of the contract between defendant and his union, which provides as follows:
“ARTICLE 8. — DISCHARGES-GRIEVANCES-ARBITRATION
Section 1. Employer shall not disCHARGE ANY EMPLOYEE WITHOUT JUST CAUSE AND SHALL GIVE AT LEAST ONE (1) WARNING NOTICE OF THE COMPLAINT IN WRITING AGAINST SUCH EMPLOYEE, EXCEPT THAT NO WARNING NOTICE NEED BE GIVEN TO AN EMPLOYEE BEFORE HE IS DISCHARGED IF THE CAUSE OF SUCH DISCHARGE IS DISHONESTY, DRINKING OR/OR UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES OR DRUGS WHILE ON DUTY; THE CARRYING OF UNAUTHORIZED PASSENGERS, OR THE FAILURE TO REPORT AN ACCIDENT. ALL WARNING NOTICES SHALL BE by Certified Mail with Return Receipt Requested to both the employee and the Union.
Any employee may request an investigation OF HIS WARNING NOTICE OR DISCHARGE; SHOULD SUCH INVESTIGATION PROVE AN INJUSTICE HAS BEEN DONE IN RELATION TO THE WARNING NOTICE, SUCH NOTICE SHALL BE CANCELLED AND REMOVED FROM HIS RECORD. Any question on the validity of a warning NOTICE MUST BE RAISED BY THE UNION with the Company within five (5) days OF RECEIPT OF THE NOTICE IN QUESTION. Any warning notice shall not be effective AFTER SIX (6) MONTHS. SHOULD AN INVESTIGATION PROVE THAT AN INJUSTICE HAS BEEN DONE IN RELATION TO AN EMPLOYEE’S DISCHARGE, HE SHALL BE REINSTATED AND COMPENSATED AT HIS USUAL RATE OF PAY WHILE HE HAS BEEN OUT OF WORK. Appeal from discharge must be taken WITHIN FIVE (5) DAYS BY WRITTEN NOTICE AND A DECISION REACHED WITHIN TEN (10) DAYS FROM DATE OF DISCHARGE.”
Plaintiff’s evidence establishes that he was not discharged for cause, that he re *90 ceived no notice as required in Section 1 of Article 8, quoted above, and that he requested an investigation of his discharge. However, neither the company nor the union took steps to investigate, nor was arbitration instituted as required by the quoted portion of the contract. On this basis, plaintiff asserts that he is entitled to an accounting for all compensation and other benefits lost while he had been wrongfully discharged.
The pertinent portion of the contract quoted above provides as follows:
“Should an investigation prove that an injustice has been done in relation to an employee’s discharge, he shall be reinstated and compensated at his usual rate of pay while he has been out of work.”
Plaintiff testified he was disabled from March 23, 1979 until June 14, 1979, when the orthopedic physician released him to attempt to work. However, he further testified that he was unable to work when he attempted to do so in May of 1979, and that a subsequent attempt at work in June, 1981 likewise resulted in return of the pain and swelling of his knee.
Plaintiff urges that he is entitled to receive both compensation and wages so long as the wage payments are not made to him in lieu of compensation.[1] ■ Plaintiff claims the amount due is a contract wage benefit and does not represent a payment made in lieu of compensation.
However, irrespective of what the name of the category placed on the payment, we do not see how plaintiff is entitled to recover. The terms of the contract provide that unjust discharge results in reinstatement and compensation at the employee’s usual rate of pay for the time he was out of work. However, plaintiff testified that he was unable to work from May 23, 1979 until he was released by the orthopedic physician on June 14, 1979. The record indicates compensation payments were made during this time.[2] Consequently, we do not see the need for an accounting, since plaintiff received all benefits to which he was entitled prior to the time of his firing in the form of compensation benefits. Plaintiff’s testimony, as corroborated by that of his own physician, established that he is partially disabled on a permanent basis, that he is only suited by training and education to perform manual labor, and that an attempt to return to manual labor in June of 1981 resulted in a return of the pain and swelling. We find nothing in the contract to indicate that defendant is obligated to keep an employee on its payroll when he can no longer perform services for it of a useful nature. Although the documents presented by plaintiff tend to show defendant planned to fire him before he returned to work, he has been unable to return to work, a fact which entitled him to compensation benefits. He cannot be “reinstated” as provided by the contract.
In addition, it should be noted that under the contract, plaintiff is entitled to his usual rate of pay and reinstatement only if an investigation, which may be requested by “any employee”, proves that “an injustice has been done in relation to” his discharge. No investigation has been made; no injustice has been proven; and under the circumstances present here,” we are unable to see how an injustice can be proved.
For the reasons assigned, the judgment appealed from is affirmed. The costs in the trial court are to be paid by defendant; costs on appeal are to be paid by plaintiff.
AFFIRMED.

. Lewing v. Vancouver Plywood Co., Inc., La.App., 350 So.2d 1320.

. The court’s reasons for judgment state the last compensation payment was made on January 21, 1980.